IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES JENKINS III,

                         Plaintiff,                            OPINION and ORDER

    v.

                                                      09-cv-323-wmc

JAMES FREEMAN,

                         Defendant.

---

         Prisoner James Jenkins III is proceeding pro se on a claim that defendant James Freeman, a staff member at the Wisconsin Resource Center, violated his Eighth Amendment rights by encouraging other prisoners to assault him.   Freeman's motion for summary judgment is now before the court.  Dkt. # 25.  Because the parties genuinely dispute whether Freeman intended to place Jenkins in danger, the motion will be denied.

**Background**

         In support of his summary judgment motion, Freeman filed a short affidavit in which he averred that he "never encouraged any inmate to attack Mr. Jenkins" and he did not "do or say anything that would create a risk of harm to Mr. Jenkins at the hands of any other inmate."  Freeman Aff. ¶ 7, dkt. #27.  In opposition to Freeman's motion, Jenkins filed a single two-page document in which he wrote that he "disput[ed] all of James Freeman['s] proposed facts [and that Freeman] was the one saying all these slanderous things and coaching the inmates to cause me harm."  Dkt. #30, at 1.  This document was not admissible because it was not sworn.  In addition, Jenkins failed to explain how he knew what Freeman did to "coach" the other prisoners and how he knew that Freeman was doing

this.  Because Jenkins is representing himself, has not litigated in this court before and seemed to be making a sincere effort to establish a genuine dispute of material fact, the court gave Jenkins an additional opportunity to submit a sworn statement setting forth his version of the specific facts.  June 9, 2010 Order, dkt. #33.  Freeman was also permitted to file supplemental materials in response to anything filed by Jenkins.  *Id.*

In response to the June 9 order, Jenkins filed a sworn statement.  *See* dkt. #35.  In that statement, he avers that he heard Freeman calling him a "fag" in front of other prisoners.  In particular, he avers that Freeman refers to him as "that fag" instead of using his name, said to other prisoners that "we gotta get this fag off the unit" and made several similar comments.  In addition, Jenkins avers that Freeman told other prisoners that Jenkins "was in for raping a little kid" and that he "busted a nut in a little bab[y's] face."  Finally, Jenkins avers that Freeman told prisoners who were "much bigger than" Jenkins that they should "take it out on" him "if they were having a bad day" and that they should "stick their middle fingers up at [him]" to start a fight.  Because of Freeman's alleged comments, Jenkins has experienced harassment from other prisoners and lives in fear that he will be attacked.[1]

---

[1]  Jenkins includes in his declaration a confusing discussion of a February 2009 altercation with another inmate, but he says that the incident "is not the incident I'm talking about that James Freeman caused."  Nor does Jenkins' amended complaint or declaration identify any another assault that occurred. Instead, Jenkins says that Freeman is "setting me up to be battered" through his comments.  Jenkins Dec., dkt. #35, at 3.  Accordingly, the court does not understand Jenkins to be alleging or suing Freeman for causing an actual, past assault.

# OPINION

If true, Jenkins' allegations support a claim that defendant Freeman has violated the Eighth Amendment. While "simple verbal harassment does not constitute cruel and unusual punishment," *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), plaintiff's allegations go beyond mere taunts. Harassment may become cruel and unusual punishment when it involves a "threat to kill, or to inflict any other physical injury." *Dobbey v. Illinois Dept. of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). Jenkins does not allege that Freeman threatened him directly, but his allegations support the drawing of an inference that Freeman has acted maliciously by encouraging other prisoners to harm him. That is sufficient. *See Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (guard's attempt to induce other prisoners to assault plaintiff may violate Eighth Amendment, even if prisoner was not assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) ("[A]n allegation that [a correctional officer] intended to do harm to [a prisoner] by inciting inmates to beat him" supports Eighth Amendment claim). *Cf. McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991) ("If prison officials put [a prisoner into a particular unit] so that a bigger inmate would have a better chance to rape him, then it is as if the officials inflicted that pain and humiliation themselves.")

Being labeled "a fag" is likely to heighten a prisoner's risk for physical or sexual assault.[2] *Howard v. Waide*, 534 F.3d 1227, 1238 (10th Cir. 2008) ("[A] jury could conclude

---

[2] In his declaration, Jenkins suggests that the word "fag" can mean "snitch" in the prison context. Plt.'s Aff., dkt. #35, at 2. To the extent other prisoners hearing the comments understood the word in that way, that creates its own increased risk for assault.

that [a gay prisoner] was particularly vulnerable to assault."); *Johnson v. Johnson*, 385 F.3d 505 (5th Cir. 2004) (gay prisoner alleging that he was sexually assaulted because other prisoners believed him to be more vulnerable).  Jenkins would be placed at an even greater risk if other prisoners believed him to be a sexual predator of children.  *Davis v. Williams*, 354 Fed. Appx. 603, 604 (3d Cir. 2009) (prisoner attacked after being called "child molester" by another prisoner); *Norman v. Schuetzle*, 585 F.3d 1097, 1101-02 (8th Cir. 2009) (same); *Moore v. Lightfoot*, 286 Fed. Appx. 844, 845 (5th Cir. 2008) (noting that several prisoners were assaulted after guards identified them as sex offenders).  These labels, combined with Jenkins' allegation that Freeman was encouraging other prisoners to take action against him, are enough to allow a reasonable jury to infer that defendant Freeman has placed Jenkins at a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

In the June 9 order, the court noted that Jenkins had been transferred to another prison and invited the parties to discuss the effect, if any, that the transfer may have on this case.  Neither party accepted this invitation in their supplemental filings.  Because Freeman has the burden to show that Jenkins' claim is moot, *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004), the court must assume for the purpose of summary judgment

---

*Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("[I]t's common knowledge that snitches face unique risks in prison."); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("[L]abeling an inmate a snitch . . . constitutes deliberate indifference to the safety of that inmate.")

that there is a reasonable likelihood that Jenkins may return to the Wisconsin Resource Center or that he will otherwise be housed near Freeman again.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (claim for injunctive relief is moot only when "it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur") (internal quotations omitted).

Even if Jenkins' claim for injunctive relief were moot, this would still leave open the possibility for a damages claim.  While plaintiff does not appear to allege that Freeman's conduct resulted in a physical injury, that is not necessarily required.  *Powers v. Snyder*,  484 F.3d 929, 932-33 (7th Cir. 2007).  "[P]hysical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited."  *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).  Even when no physical injury occurs, a claim for damages may survive if the defendant caused plaintiff psychological harm and acted "maliciously and sadistically" for the purpose of harming the plaintiff.  *Babcock v. White*, 102 F.3d 267, 273 (7th Cir. 1996).[3]

If Jenkins' allegations are credited, as they must be in the context of a summary judgment motion, then a jury could reasonably infer that Freeman acted maliciously. A

---

[3]  The court does not consider whether Jenkins adequately alleged that Freeman caused him psychological pain because Freeman does not raise this issue in his summary judgment materials.  *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.")

prisoner is not entitled to damages "for mental or emotional injury . . . without a prior showing of physical injury." 42 U.S.C. § 1997e(a). But even if Jenkins has not suffered any physical harm, he may still be awarded nominal or punitive damages. *Calhoun*, 319 F.3d at 941-42 ("Although § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself.")

The court recognizes that the facts here present a close case. Jenkins does not allege threatening conduct nearly as severe as that in *Irving*, 519 F.3d at 449 (guard gave another prisoner a razor to hurt plaintiff with), or *Northington*, 973 F.2d at 1525 (guard put a gun to prisoner's head), but it is more threatening than the facts considered to be inadequate in *Dobbey*, 574 F.3d at 445 (guard hung a noose where prisoners could see it for 20 minutes). As stated by the court in *Dobbey*, the question under the Eighth Amendment is whether the defendant's conduct can "reasonably be taken seriously as a threat, rather than as . . . harassment." *Id.* Even if Jenkins' allegations are true, it may be that Freeman did not intend for anyone to harm Jenkins and that Freeman's comments were simply crude, harassing humor.

At the summary judgment stage, however, the court must draw all reasonable inferences in favor of the nonmoving party. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489 (7th Cir. 2007). In this case, Jenkins alleges that Freeman, in front of other prisoners, called him names that placed him among one of the most vulnerable and disliked groups in prison, while telling those other prisoners that Jenkins needed to be taken "off the unit" and

that they should "take it out on" him when they were having a bad day.  Because a reasonable jury could view these comments as true threats, rather than mere harassment, summary judgment is inappropriate.

The next question is how the case should proceed from this point.  Thus far, Jenkins has been representing himself, but his filings at summary judgment and throughout the case demonstrate that he has difficulty explaining his position and following court procedures. It would likely be impossible for plaintiff to represent himself at trial with even a minimal level of competence.

Under *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc), a decision whether to appoint counsel must be made by weighing the complexity of the case against the abilities of the pro se litigant.  While plaintiff's case may not be particularly complex, it would seem that he might have difficulty prosecuting even the simplest of cases.  Like the prisoner in *Pruitt*, 503 F.3d at 550, his filings have been "disorganized, very poorly written, and at times incoherent."  While it is not clear what plaintiff's likelihood of success is, he is sure to fail without assistance.   If his filings to date are an accurate indicator of his abilities, he will be unable prepare pretrial submissions, apply the rules of evidence at trial, effectively cross examine witnesses or even tell his own story.

Therefore, all further proceedings in this case will be stayed temporarily in order to locate a lawyer who is willing to represent plaintiff.  A lawyer accepting appointments in cases such as this take on the representation with no guarantee of compensation for his or her work.

Plaintiff should be aware that in any case in which a party is represented by a lawyer, the court communicates only with counsel.  Thus, once counsel is appointed, the court will no longer

7

communicate with plaintiff directly about matters pertaining to this case.  It will be expected

that plaintiff will communicate directly with his lawyer about any concerns and allow the lawyer

to exercise his or her professional judgment to determine which matters are appropriate to bring

to the court's attention, what motions and other documents are appropriate to file, and what

steps will most effectively advance plaintiff's case, keeping in mind his appointed counsel's

paramount obligation will be to advance plaintiff's interests in light of the facts, law and

ethical constraints.


## ORDER

IT IS ORDERED that

(1) Defendant James Freeman's motion for summary judgment, dkt. #25, is DENIED; and

(2) Further proceedings in this case are STAYED and the trial date is STRICKEN pending appointment of counsel for plaintiff.  If the court finds counsel willing to represent plaintiff, the court will advise the parties of that fact. Soon thereafter, a status conference will be held to establish a new schedule for this case.


Entered this 15th day of July, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

8